UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| FERNCREEK CARDIOLOGY, P.A., and PREMIER CARDIOVASCULAR CENTER, P.A.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE OF NORTH CAROLINA, INC., UNITED HEALTHCARE INSURANCE COMPANY, INC., UNITED HEALTHCARE SERVICES, INC., and UNITEDHEALTH GROUP, INC.,<br><br>Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)**<br><br>Civil Action No. _____ |

Plaintiffs **FERNCREEK CARDIOLOGY, P.A.** ("Ferncreek") and **PREMIER CARDIOVASCULAR CENTER, P.A.** ("Premier"), for their Complaint against Defendants UNITED HEALTHCARE OF NORTH CAROLINA, INC., UNITED HEALTHCARE INSURANCE COMPANY, INC., UNITED HEALTHCARE SERVICES, INC., and UNITEDHEALTH GROUP, INC. (collectively referenced as "United" and/or the "Defendants"), state and allege as follows:

## INTRODUCTION

1. Medicare Part C[1] created the Medicare Advantage (MA) program. The MA program provides Medicare benefits through private plans rather than from the traditional Medicare fee-for-service program. These private plans are called "Medicare Advantage plans."

---

[1] *See* 42 U.S.C. §§ 1395w-21, *et seq.*

2. Under the MA program, health insurance organizations contract with Medicare to provide federally subsidized health plans to Medicare enrollees. The Centers for Medicare & Medicaid Services ("CMS"), Medicare's regulatory agency, refers to these health insurance organizations as MA Organizations ("MAO").

3. United is an MAO that offers private coverage to senior citizens and disabled Medicare beneficiaries in North Carolina under select Medicare Advantage plans.

4. In exchange for the administration of the MA plans, United receives federal funding. Because United receives federal funding, it is subject to certain state and federal statutes, guidelines, rules and administrative oversight.

5. United contracts with physicians and other health care professionals ("Providers") to provide medical care and treatment to senior citizens, disabled persons and otherwise qualified individuals under these Medicare Advantage plans. Providers having a contract with United are considered "in-network" for the contracted MA plans. Otherwise, Providers are "out of network." MA participants who are treated by "out of network" Providers must pay out of pocket.

6. Ferncreek and Premier are Providers specializing in cardiovascular care, including treatment of patients suffering from serious heart and vascular diseases. Ferncreek and Premier each contract with United and have been "in network" Providers under four of United's MA plans.

7. On May 5, 2014, United sent a "Notice of Amendment to Medical Group Contract" ("Notice") to Ferncreek. The Notice terminated Ferncreek's participation in three of the four MA plans effective August 15, 2014. A copy of the Notice is attached as <u>Exhibit A</u>.

8. On May 5, 2014, United also sent a similar Notice to Premier, terminating its participation in three of the four MA plans effective August 15, 2014. A copy of the Notice is attached as <u>Exhibit B</u>.

9. United called the Notice an "Amendment" in an effort to avoid its obligations under § 422.202(d).

10. The Notice is, in fact, a "termination" pursuant to 42 C.F.R. § 422.202(d).

11. United has failed to state any reason(s) for the termination(s) as required by 42 C.F.R. § 422.202(d)(1)(i) and 42 C.F.R. § 422.205(a).

12. United has not otherwise provided any reason(s) to Ferncreek or Premier for its unilateral decision to terminate Ferncreek and Premier as providers under the MA plans.

13. Despite providing no basis for the termination, the Notice did provide boiler plate language that Plaintiffs had rights of appeal as required by 42 C.F.R. § 422.202(d)(1)(ii).

14. On June 4, 2014, Ferncreek sent written correspondence to United objecting to the proposed amendment and appealing United's unilateral decision to terminate Ferncreek from the MA plans. A copy of Ferncreek's Appeal letter is attached as <u>Exhibit C</u>.

15. On August 5, 2014, Premier sent written correspondence to United objecting to the proposed amendment and appealing United's unilateral decision to terminate Premier from the MA plans. A copy of Premier's Appeal letter is attached as <u>Exhibit D</u>.

16. By way of written correspondence dated June 23, 2014, United notified Ferncreek that its appeal had been denied. A copy of United's denial letter to Ferncreek is attached as <u>Exhibit E</u>.

17. Once again, United did not provide any reason for the denial. Further, United did not set forth any basis for its unilateral decision to terminate Ferncreek as a provider under the MA plans.

18. Likewise, United has not provided Premier with any reason for its unilateral decision to terminate Premier as a provider under the MA plans.

19. On June 12, 2014, before the time for appealing United's termination had expired, and before completing its review of Ferncreek's appeal, United sent written correspondence to the affected patients of Ferncreek notifying them that the physicians at Ferncreek would no longer be able to provide medical care and treatment under their MA plans. A copy of the written correspondence sent by United to Ferncreek's patients is attached as <u>Exhibit F</u>.

20. The notification to patients states that United's removal of the physicians at Ferncreek from the MA plans would "support better health outcomes" and "meet the health care needs of each of our members."

21. The effective termination created by the "amendment" leaves hundreds of senior citizens and disabled patients, in the middle of a plan year, without hope of getting coverage that would allow them to continue to see their physicians at Ferncreek and Premier.

22. United's termination of Ferncreek and Premier as providers under the MA plans will damage long-standing trust relationships between patients and their physicians.

23. United's termination of Ferncreek and Premier will cause a significant decrease in income to the Plaintiff practices because most patients will not be able to afford to continue to see providers who are "out of network."

24. The harm to Plaintiffs is irreparable because of the likelihood that patients who switch to an "in network" provider will not switch back to Plaintiffs' practices *even if* Plaintiffs ultimately prevail on the merits.

25. United's termination of Ferncreek and Premier will impose significant hardship on elderly and disabled patients who require continuous specialized care (i.e. patients with heart disease) by disrupting those patients' continuity of care and blocking access to appropriate medical providers and specialists.

26. United's unilateral terminations of Ferncreek and Premier from one of more of its MA plans offends the public interest.

27. Termination of the Plaintiffs' relationship with Ferncreek and Premier will significantly limit the pool of providers available to care for elderly or disabled beneficiaries in the local community. In addition, elderly and disabled patients suffer more from an interruption of continuity of care than members of the general population due to their fragile state of health.

28. United's terminations of Ferncreek and Premier are undoubtedly attempts by United to increase profit margins associated with providing medical care and treatment to North Carolina's elderly and disabled citizens in the wake of decreased federal funding for MA plans under provisions of the Affordable Care Act.

29. By terminating Ferncreek and Premier as providers, United has effectively terminated numerous senior citizens and disabled Medicare beneficiaries from the MA plans that the beneficiaries paid for (and will continue to pay for) with the belief that they would continue to see their chosen Providers at least through the end of the MA plan year.

## THE PARTIES

30. Ferncreek is a domestic business corporation organized and existing under the laws of the State of North Carolina and conducting business in the city of Fayetteville, Cumberland County, North Carolina, with its registered agent and principal place of business located at 4140 Ferncreek Drive, Suite 501, Fayetteville, North Carolina 28314.

31. Premier is a domestic business corporation organized and existing under the laws of the State of North Carolina and conducting business in the city of Fayetteville, Cumberland County, North Carolina, with its registered agent at 2418 Blue Ridge Road, Suite 200, Raleigh, North Carolina 27607 and principal place of business located at 1207 Walter Reed Road, Fayetteville, North Carolina 28304.

32. Defendant United Healthcare of North Carolina, Inc. ("UHCNC") is a domestic corporation organized and existing under the laws of the State of North Carolina with its principal place of business located at 3803 North Elm Street, Greensboro, Guilford County, North Carolina 27455-2593 and its registered agent located at 150 Fayetteville Street, Box 1011, Raleigh, Wake County, North Carolina 27601-2957. Upon information and belief, UHCNC is an underwriter for United Healthcare Services, Inc.

33. Defendant United Healthcare Insurance Company, Inc. ("UHIC") is a corporation organized under the laws of the State of Connecticut with a principal place of business located in Hartford, Connecticut. UHIC contracts on behalf of itself and its affiliates for the payment of healthcare services provided to a participating provider's patients. UHIC is the primary underwriter of insurance provided by United Healthcare Services, Inc. ("UHS") and is a wholly owned and controlled subsidiary of UnitedHealth Group, Inc. ("UHG").

34. United is one of the largest commercial payers in North Carolina and has substantial market share in the State of North Carolina, including in Cumberland County.

35. Defendant USH is a subsidiary of UHG. It is a corporation organized under the laws of the Minnesota with its principal place of business located in Minnetonka, Minnesota. UHS provides health insurance plans for employers, individuals and families throughout the United States and operates the MA plans.

36. Defendant UHG is a corporation organized under the laws of the Minnesota with a principal place of business located in Minnetonka, Minnesota.

37. In 2013, UHG had revenues of $122.5 billion and, through its subsidiaries, provides healthcare insurance coverage and services to more than 85 million people globally.

## JURISDICTION AND VENUE

38. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, based on the federal question presented. Additionally, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' other claims, including for breach of contract, breach of the implied warranty of good faith and fair dealing and defamation, which arise under federal and state common law.

39. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because (a) United resides, is found, has an agent, and transacts its affairs in this district; and (b) United conducts a substantial amount of business in this district and insures and administers group health plans both inside and outside this State and this district.

## FACTUAL BACKGROUND

40. Beginning in 2011, United entered into a contract with Ferncreek (the "Ferncreek Contract"), which has an effective date of February 11, 2011. A redacted version of the Ferncreek Contract is attached as <u>Exhibit G</u>.

41. Beginning in 2011, United entered into a contract with Premier (the "Premier Contract"), which has an effective date of April 1, 2011. A redacted version of the Premier Contract is attached as <u>Exhibit H</u>.

42. The Ferncreek Contract and the Premier Contract (collectively referred to as the "Contracts") are, upon information and belief, substantively identical agreements.

43. United drafted the Contracts.

44. United set forth "Guiding Principles" under which it agreed to operate. Those "Guiding Principles" included the following statements:

- "We want to work together with America's best physicians to improve the health care experience for our customers."

- "We respect and support the physician/patient relationship while adhering fairly to the contract for benefits we provide our customers."

- "Fairness and efficiency will govern the ways in which we administer our products. We will make determinations promptly. Our commitments to our customers will be clear. We will honor our agreements. When it comes to coverage determinations, the language of the benefit contract will take precedence."

45. In the event that a party wanted to terminate its respective contract without cause, the Contracts provide as follows: "[E]ither you or we can terminate this agreement *effective on an anniversary of the date this agreement begins*, by providing at least 90 days written notice" (emphasis added).

46. United did not provide 90 days written notice of termination.

8

47. United did not terminate the Contracts on an anniversary date.

48. Instead of complying with the terms of the Contract and federal law, the Notices relied on the following provision of the Contracts: "We can amend this agreement or any of the appendices on 90 days' written or electronic notice by sending you a copy of the amendment. Your signature is not required to make the amendment effective."

49. However, pursuant to the Appeal Process document provided with the Notices, United expressly stated: "[United] has removed you from its network maintained for Medicare Advantage benefit plans by way of **termination** of your participation agreement without cause, nonrenewal of your participation agreement, or an amendment or notice removing Medicare Advantage benefit plans from your participation agreement." (emphasis added). See Exhibits A and B.

50. Upon information and belief, United has initiated the process of removing Ferncreek and Premier Providers from its listing of "in network" providers.

### United's Awareness of the Impropriety of Their Actions

51. In an action filed in the United States District Court for the District of Connecticut, captioned *Fairfield County Medical Association v. United Healthcare of New England, et al.* and assigned Civil Action No. 3:13-cv-1621 (SRU), by Ruling and Order filed December 5, 2013, the Honorable Stefan R. Underhill, U.S.D.J. granted an injunction in favor of two plaintiff medical societies against United on a substantially similar factual basis, finding that the "terminations" had been handled improperly under the contractual language similarly worded contracts. The Ruling and Order enjoined United from removing any of the physician members from the MA networks. Further, the Ruling and Order noted that the preliminary injunction would remain in effect until a ruling on the merits of the plaintiff's claims or a further order of

the Court. A copy of Judge Underhill's Ruling and Order dated December 5, 2013 is attached as Exhibit I.

52. By Order issued December 8, 2013, Judge Underhill denied the defendants' motion to stay the injunction. A copy of Judge Underhill's Order dated December 8, 2013 is attached as Exhibit J.

53. United filed an emergency appeal of Judge Underhill's Ruling and Order dated December 5, 2013 in the United States Court of Appeals for the Second Circuit. On December 12, 2013, the Second Circuit ordered that the motion for an emergency stay be referred to a 3-judge panel for consideration; denied United's motion for an interim stay of the December 5, 2013 Ruling and Order; and ordered that the parties provide expedited briefs.

54. On February 7, 2014, the Second Circuit issued a Summary Order affirming the preliminary injunction entered by Judge Underhill on December 5, 2013 with slight modifications. A copy of the Summary Order issued by the Second Circuit is attached as Exhibit K.

55. Accordingly, United knew or should have known that its actions in effectively terminating Ferncreek and Premier were illegal, unauthorized and improper. Despite the Ruling in the 2nd Circuit, United deliberately violated the terms of the Contracts as well as applicable federal law.

# FIRST CAUSE OF ACTION
## COUNT ONE
### (Declaratory Judgment – Breach of Contract)

56. Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully set forth.

57. Contracts between Providers and MAO are interpreted within the context of state and federal law.

58. As an MAO, United is required to comply with Title 42, Part 422 of the Code of Federal Regulations ("CFR").

59. Title 42, Part 422 of the CFR mandate specific requirements for terminating a medical provider's participation in a MA plan:

> Suspension or termination of contract. An MA organization that operates a coordinated care plan or network MSA plan providing benefits through contracting providers must meet the following requirement:
>
> (1) Notice to physician. An MA organization that suspends or terminates an agreement under which the physician provides services to MA plan enrollees must give the affected individual written notice of the following:
>
> > i. **The reasons for the action, including, if relevant, the standards and profiling data used to evaluate the physician and the numbers and mix of physicians needed by the MA organization.**
> >
> > ii. The affected physician's right to appeal the action and the process and timing for requesting a hearing.
>
> (2) Composition of hearing panel. The MA organization must ensure that the majority of the hearing panel members are peers of the affected physician.

11

> (3) Notice to licensing or disciplinary bodies. An MA organization that suspends or terminates a contract with a physician because of deficiencies in the quality of care must give written notice of that action to licensing or disciplinary bodies or to other appropriate authorities.
>
> (4) Timeframes. An MA organization and a contracting provider must provide at least 60 days written notice to each other before terminating the contract without cause.

42 C.F.R. § 422.202(d) (emphasis added).

60. The Notices failed to provide any reason for the terminations.

61. The Notices failed to provide any standards used to evaluate Ferncreek or Premier.

62. The Notices failed to provide any profiling data used to evaluate Ferncreek or Premier.

63. The Notices did not provide the number or make-up of physicians needed by United in its MA plan(s).

64. The Notices failed to provide sufficient information for Ferncreek or Premier to respond adequately.

65. The Notices failed provide sufficient information for Ferncreek or Premier to contest their respective terminations on appeal or otherwise.

66. United has impaired and violated Ferncreek's and Premier's procedural and substantive due process rights to contest their terminations from one or more of the MA plans.

67. The Notices fail to comply with the federal statutory requirements established by Title 42 Part 422 of the Code of Federal Regulations and are invalid and unenforceable.

68. The Contracts were drafted by United and contain explicit covenants of good faith and fair dealing in the "Guiding Principles" section, as well as implied covenants of good faith and fair dealing.

69. The Contracts specify that termination without cause can occur only on the anniversary of the effective date of the Contract and upon at least 90 days prior written notice.

70. The Contracts also provide that an amendment to the Contracts can occur upon 90 days' notice, and that mutual consent is not required to make such an amendment effective.

71. Despite United's classification of its termination of Ferncreek and Premier from the MA Plans as "amendments" to the Contracts, the actions of United are, in fact, terminations without cause.

72. The dubious and dishonest application of the Contracts' amendment provisions by United in order to terminate Ferncreek and Premier from select MA plans constitutes bad faith. Such actions evidence United's intent to injure Plaintiffs' rights to receive the benefits of their Contracts. Further, such actions illustrate United's intent to circumvent the anniversary date limitations for implementing a termination as set forth in the Contracts.

73. United's bad faith conduct was intended to maximize profit at the expense of the healthcare of the disabled and elderly. Specifically, United attempted to avoid the administrative expense(s) associated with terminating individual physician agreements separately and on the individual anniversary dates in order to unlawfully terminate Plaintiffs from the MA network.

74. United's bad faith actions in terminating Ferncreek and Premier unmask United's intent to shift the financial burdens imposed by the Affordable Care Act to physicians and patients given that reimbursements to United have been reduced to offset the cost of implementing the Affordable Care Act.

75. There exists a justiciable controversy as to whether United's terminations of Ferncreek and Premier on August 15, 2014, pursuant to the defective Notices, violate federal law(s), constitute a breach of the Contracts and/or a breach of the express and/or implied covenants of good faith and fair dealing.

## COUNT TWO
### (Permanent Injunctive Relief)

76. Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully set forth.

77. Based on the foregoing violations and breaches, Ferncreek and Premier are entitled to a permanent injunctive relief barring United from terminating Ferncreek and Premier from participation in one or more of the Medicare Advantage plans.

78. Ferncreek and Premier face an imminent threat of irreparable harm to their practices and reputations.

79. Ferncreek is one of the largest cardiovascular practices in Cumberland County, North Carolina.

80. Ferncreek's Providers maintain specialty qualifications for the treatment of cardiac disease. A few of the biographical profiles of Ferncreek Providers are attached as Exhibit L.

81. Further, Ferncreek maintains satellite offices in Harnett County, Bladen County, Hoke County and Sampson County. No other cardiology practices service these rural counties – especially given the subspecialty qualifications of Ferncreek's Providers.

82. Premier is a smaller cardiology practice owned by Dr. Kinsley Okoroafor. A copy of his biographical profile is attached as Exhibit M.

83. Ferncreek and Premier are essential medical providers in their communities. MA beneficiaries in those communities have relied on Plaintiffs' for years to provide high-quality, efficient medical care and treatment.

84. United's terminations of Ferncreek and Premier will force MA beneficiaries to switch providers and will cause widespread disruption to their respective patients' continuity of care.

85. United's termination will cause Ferncreek and Premier to suffer from a stigma of having been "dropped" by United. Primary care and other referring physicians, as and patients will naturally presume that Ferncreek and Premier did something wrong to warrant termination from the MA Plans.

86. Terminating Ferncreek and Premier will strand Medicare beneficiaries and overburden the entire medical delivery system in Fayetteville, Cumberland County, North Carolina and in the State of North Carolina, in violation of 42 C.F.R. § 422.112(a)(1) and (a)(10).[2]

87. There is no adequate remedy at law available to prevent the substantial and irreparable harm to Ferncreek and/or Premier, as well as to their respective patients and the communities that rely on Ferncreek and Premier, from United's unlawful, unilateral, and abrupt termination of Ferncreek and Premier from the MA plans.

---

[2] Specifically, section 422.112(a)(1) of the CMS regulations requires each Medicare Advantage plan to "[m]aintain and monitor a network of appropriate providers that is supported by written agreements and is sufficient to provide adequate access to covered services to meet the needs of the population served." 42 C.F.R. § 422.1 12(a)(1). Similarly, section 422.112(a)(10) provides that Medicare Advantage plans "that meet Medicare access and availability requirements through direct contracting network providers must do so consistent with the prevailing community pattern of health care delivery in the areas where the network is being offered." *Id.* § 422.112(a)(10).

88. The balancing of equities favors the granting of an injunction barring United from enforcing the "amendment" based upon the Notices. In stark contrast to the irreparable harm faced by Ferncreek, Premier, and their respective patients and communities, United will not suffer any material harm if United continues to permit MA beneficiaries access to Ferncreek and Premier, who remain presently within the MA plan network.

89. United's present customers and other potential customers, unaware of United's unilateral terminations of Ferncreek and Premier effective August 15, 2014, likely expect Ferncreek and Premier to remain included in the MA plan.

## COUNT THREE
### (Defamation)

90. Plaintiffs repeat and re-allege each and every one of the foregoing allegations as if fully set forth.

91. United made false, defamatory statements concerning Ferncreek and Premier and concerning Ferncreek's and Premier's respective trade or profession.

92. United published said statements to various third persons, including patients of both Ferncreek and Premier.

93. These defamatory statements caused injury to Ferncreek's reputation.

94. These defamatory statements caused injury to Premier's reputation.

95. United's written correspondence to patients of Ferncreek and Premier concerning the terminations and removals of Ferncreek and Premier from select MA plans suggest that Ferncreek and Premier were incompetent, negligent, or otherwise not acting in the best interests of their respective patients.

96. Such statements are false. Ferncreek and Premier have a proven track record of competence, and there is no evidence that Ferncreek or Premier have ever failed to act in the best interests of their patients.

97. United has both made and published statements about and concerning Ferncreek with the intent to injure Ferncreek's reputation in its trade or profession.

98. United has both made and published statements about and concerning Premier with the intent to injure Premier's reputation in its trade or profession.

99. United has made and published statements that are susceptible of two interpretations one of which is defamatory.

100. United has made and published statements which are defamatory when considered with innuendo, colloquium, and explanatory circumstances.

101. The false statements and publications made by United have caused substantial and irreparable harm to Ferncreek's reputation by causing Ferncreek to (a) lose support and confidence of referring physicians and existing patients, (b) lose potential new patients, and (c) motivating patients to find another provider who may "meet [their] healthcare needs" due to the suggestion by United that this termination is somehow punitive in nature.

102. The false statements and publications made by United have caused substantial and irreparable harm to Premier's reputation by causing Premier to (a) lose support and confidence of referring physicians and existing patients, (b) lose potential new patients, and (c) motivating patients to find another provider who may "meet [their] healthcare needs" due to the suggestion by United that this termination is somehow punitive in nature.

103. The false statements made by United concerning the terminations of Ferncreek and Premier constitute libel per se, libel per quod, and slander.

17

**WHEREFORE**, Plaintiffs Ferncreek and Premier respectfully request the following relief:

1. That United be required to comply with 42 C.F.R. § 422.202(d) prior to terminating Ferncreek and/or Premier from United's MA plans;

2. That the Notices provided to Ferncreek and Premier failed to comply with 42 C.F.R. § 422.202(d)(1)(i), based, in part, upon the failure to provide any reason for the terminations;

3. That the Notices to Ferncreek and Premier are defective and invalid, and thus cannot serve as the basis for terminating Ferncreek and Premier from the MA plans;

4. That the provision in the Contracts for terminating a provider without cause applies to the circumstances *sub judice*, and that United may not treat the termination from the MA plan as an "amendment" to the Contracts;

5. That, in the event there is any ambiguity in the Contracts or Notices, that said ambiguities should be construed against United pursuant the doctrine of *contra proferentem*;

6. That United's actions constitute breaches of the Contracts and/or breaches of the express and implied covenants of good faith and fair dealing incorporated into the Contracts;

7. That United cannot terminate Ferncreek or Premier from participating in the Medicare Advantage Network effective August 15, 2014;

8. A permanent injunction barring United from terminating Ferncreek and Premier from participating in the MA plan effective as of August 15, 2014 and allowing Ferncreek and Premier to continue as "in network" Providers until December 31, 2014, which is the end of plan year;

9. That the Court permanently enjoin United from making false, misleading, and/or otherwise defamatory statements concerning Ferncreek and Premier and reinstate Ferncreek and Premier as "in network" Providers;

10. That the Court award monetary damages to Ferncreek and Premier as a result of United's action; and

11. That the Court award Plaintiffs such other and further relief, including interest, attorney's fees and costs, as is available under law.

**THIS** 8th day of August, 2014.

    s/ Tricia M. Derr
    Sara R. Lincoln, N.C. State Bar No. 22744
    Tricia M. Derr, N.C. State Bar No. 24438
    Lincoln Derr PLLC
    6000 Fairview Road, Suite 655
    Charlotte, North Carolina 28210
    Telephone: (704) 496-4500
    Email: sara.lincoln@lincolnderr.com
    Email: tricia.derr@lincolnderr.com
    ***Attorneys for Plaintiffs***

4852-1371-6764, v. 1